THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

<table>
<tr><td></td><td>*</td><td></td></tr>
</table>

PHYSICIANS FOR HUMAN RIGHTS,

    Plaintiff,

          v.

U.S. DEPARTMENT OF DEFENSE, *et al.*,

    Defendants.

Civil Action No.: RDB-08-273

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION

Plaintiff Physicians for Human Rights ("PHR"), a non-profit human rights group, filed the present action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 522 *et seq.*, seeking to compel Defendants, the Department of Defense ("DOD") and its components, the Defense Intelligence Agency ("DIA"), United States Special Operations Command ("USSOCOM"), and United States Central Command ("CENTCOM") (collectively "Defendants"), to reveal documentary information relating to a mass gravesite at Dasht-e-Leili, Afghanistan, where Taliban fighters are alleged to be buried.[1] The various components of the DOD searched for, and produced certain documents in response to Plaintiff's initial FOIA request, and the parties filed cross-motions for summary judgment. On December 30, 2009 this Court entered an Opinion granting in part, and denying in part

---

[1] Plaintiff filed its lawsuit in the U.S. District Court for the District of Columbia and this case was originally assigned to Judge Colleen Kollar-Kotelly. Because of the high volume of cases currently pending before that court, the present case was reassigned to the undersigned on June 19, 2009. *See* ECF No. 25. This Memorandum Opinion remains a decision of the United States District Court for the District of Columbia.

both motions. The case presented two issues: (1) whether Defendants properly withheld information under the claimed FOIA exemptions; and (2) whether Defendants conducted reasonably adequate searches for responsive documents under FOIA.

With respect to the first issue, this Court ruled that several of the Defendants had properly withheld information under certain exemptions, but some of the Defendants, namely the Joint Staff and the DIA, were instructed to submit certain documents to the court for *in camera* review so that the court could make a better determination as to whether the documents were properly withheld under the claimed exemptions. After completion of the *in camera* review, this Court granted the Defendants' motion for summary judgment with respect to the withholdings claimed by the Joint Staff and the Defense Intelligence Agency. *See* January 26, 2010 Order, ECF No. 30.

On the second issue, this Court ruled that the Defendants generally complied with the FOIA search requirements, but the temporal scope of CENTCOM's search was deemed to be too narrow. CENTCOM was instructed to conduct a new search for documents covering a broader period of time, and Defendants were also granted permission to submit a renewed motion for summary judgment after conducting the new search. Defendants conducted a new search, submitted three additional documents to PHR, and subsequently filed a Renewed Motion for Summary Judgment (ECF No. 35) on April 15, 2010. PHR filed its own Renewed Cross-Motion for Summary Judgment (ECF No. 39) on May 21, 2010. Accordingly, the only issue before this Court concerns the sufficiency of the supplemental search conducted by CENTCOM and its withholding of information contained in the three documents located by that search. This Court has reviewed the record, as well as the

2

pleadings and exhibits, and finds that no hearing is necessary. *See* Local Rule 7(f) (D. D.C. 2010). For the reasons stated below, Defendants Renewed Motion for Summary Judgment (ECF No. 35) is GRANTED and Plaintiff's Renewed Cross-Motion for Summary Judgment (ECF No. 39) is DENIED.

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249. A court is obligated to consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

In the context of an action filed under the Freedom of Information Act, a district court reviewing a motion for summary judgment conducts a *de novo* review of the record, and the responding federal agency bears the burden of proving that it has complied with its obligations under the Act. 5 U.S.C. § 552(a)(4)(B). To prevail on summary judgment, an agency must demonstrate "that it has conducted a search reasonably calculated to uncover all

relevant information, which either has been released to the requester or is exempt from disclosure." *Thomas v. HHS, Food & Drug Admin.*, 642 F. Supp. 2d 5, 8 (D.D.C. 2009) (internal citations omitted).   On the other hand, in opposing a motion for summary judgment or cross-moving for summary judgment, a FOIA plaintiff cannot simply rest upon conclusory statements, but must instead "set forth 'affirmative evidence' showing a genuine issue for trial." *Broaddrick v. Exec. Office of President*, 139 F. Supp. 2d 55, 65 (D.D.C. 2001) (quoting *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987)).

To meet its burden at summary judgment, an agency may rely upon declarations and *Vaughn* indexes[2] to describe, in reasonable detail, the nature of its search and the withheld material, and to explain why such material falls within the claimed FOIA exemptions.  *See Kidd v. DOJ*, 362 F. Supp. 2d 291, 294 (D.D.C. 2005).   Through the submission of appropriate affidavits, an agency must show "beyond material doubt . . . that it has conducted a search reasonably calculated to uncover all relevant documents." *Weisberg v. DOJ*, 705 F.2d 1344, 1351, (D.C. Cir. 1983).  In addition, an agency "bears [the] burden of demonstrating that . . . all information that falls within the class requested either has been produced, is unidentifiable, or is exempt from disclosure." *Cole v. DOJ*, Civ. Act. No. 05-674, 2006 WL 2792681, at *1 (D.D.C. Sept. 27, 2006) (citation omitted).

---

[2]   A *Vaughn* index is an affidavit provided by a government agency that lists each withheld document, or portion thereof.  The index correlates each withholding with a specific FOIA exemption and provides the agency's justification for nondisclosure.  *See Vaughn v. Rosen*, 484 F.2d 820, 157 U.S. App. D.C. 340 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977, 94 S. Ct. 1564, 39 L. Ed. 2d 873 (1974).

## ANALYSIS

The background facts of this action were fully set forth in this Court's Memorandum Opinion of December 30, 2009 and will not be reiterated here. *See Physicians for Human Rights v. United States Dep't of* Defense, 675 F. Supp. 2d 149, 155-56 (D.D.C. 2009) (ECF No. 28). In resolving the pending renewed cross-motions for summary judgment this Court must address (1) whether Defendants conducted reasonably adequate searches for responsive documents under FOIA; and (2) whether Defendants properly withheld information under the claimed FOIA exemptions.

### I. Adequacy of Defendants' Searches for Responsive Documents

To comply with its search responsibilities under FOIA, a government agency must "show beyond material doubt 'that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested.'" *People for the American Way Found. v. National Park Service*, 503 F. Supp. 2d 284, 292 (D.D.C. 2007) (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68, (D.C. Cir. 1990)). "The adequacy of an agency's search is measured by a standard of reasonableness, and is dependent upon the circumstances of the case." *Weisberg*, 705 F.2d at 1351 (internal citations and quotations omitted). An agency will not be granted summary judgment "if a review of the record raises substantial doubt, particularly in view of 'well defined requests and positive indications of overlooked materials.'" *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326, (D.C. Cir. 1999) (quoting *Founding Church of Scientology v. Nat'l Sec. Agency*, 610 F.2d 824, 837, (D.C. Cir. 1979)). However, there is no requirement under FOIA that an agency's search be exhaustive, for "the issue is *not* whether any further

documents might conceivably exist but rather whether the government's search for responsive documents was adequate." *Perry v. Block*, 684 F.2d 121, 128, (per curiam) (emphasis in original). *See Meeropol v. Meese*, 790 F.2d 942, 952-53, (D.C. Cir. 1986) ("[A] search is not unreasonable simply because it fails to produce all relevant material; no [large] search . . . will be free from error.").

To sustain its burden on summary judgment, an agency may rely on affidavits to demonstrate the adequacy of its search. Here, Defendants have submitted one[3] affidavit from Jacqueline J. Scott, Senior Analyst for Freedom of Information Act and Privacy Act for the U.S. Central Command, Department of Defense.[4] *See* Jacqueline J. Scott Decl., Defs.' Ex. A, ECF No. 35-2 (hereinafter "Third Scott Decl."). That declaration describes in sufficient detail the location, search methods, and scope of the search conducted. Specifically, the Ms. Scott's declaration lists the nine different organizations[5] that CENTCOM tasked to search for responsive documents. *Id.* at ¶ 4. The declaration also indicates that those nine organizations "are the only offices of record within USCENTCOM (including Headquarters USCENTCOM and its area of operational responsibility, i.e.,

---

[3] Accompanying their previous motion for summary judgment, Defendants submitted eight declarations. The present declaration concerns only the supplemental search ordered by this Court as a result of its December 30, 2009 Memorandum Opinion. *See Physicians for Human Rights v. United States Dep't of* Defense, 675 F. Supp. 2d 149, 155-56 (D.D.C. 2009) (ECF No. 28).

[4] Ms. Scott previously submitted two declarations in support of Defendants' first motion for summary judgment. *See See Physicians for Human Rights v. United States Dep't of* Defense, 675 F. Supp. 2d 149, 162-63 (D.D.C. 2009) (ECF No. 28).

[5] Those organizations are: USCENTCOM's (1) Intelligence directorate; (2) Operations directorate; (3) Strategy, Plans, and Policy directorate; (4) Commander's Initiative Group Office; (5) History Office; (6) Staff Judge Advocate Office; (7) Inspector General Office; and (8) Records Management Office. In addition, Ms. Scott's declaration indicates that forces in Afghanistan were also tasked with searching for responsive documents. Jacqueline J. Scott Decl. ¶ 4.

Afghanistan), that were reasonably likely to maintain documents responsive to the Physicians for Human Rights request." *Id.* The declaration provides the search terms that were used and describes the various search methods employed. *Id.* at ¶¶ 3-6.

PHR asserts that Defendants' declaration that it submitted in support of the adequacy of their searches is insufficiently detailed in that it "does not provide information specific enough to enable PHR to challenge the procedures utilized." PHR Cross-Mot. Summ. J. at 5, ECF No. 39. Specifically, PHR challenges the declaration submitted by Defendants on the ground that the although the declaration lists the organizations that were searched, it fails to list the organizations that were *not* searched. *Id.* PHR also claims that the declaration is insufficient because it is not detailed enough with regard to how the key word search was carried out, that the declaration fails to identify the specific individuals who conducted the searches, and because the declaration does not indicate the precise method by which Defendants ruled out false positive responses. *Id.* Finally, PHR challenges the declaration because it "does not show that CENTCOM searched in Afghanistan for responsive documents." *Id.* at 6.[6]

PHR's arguments are unavailing. This Court previously found affidavits similar to the one submitted by Ms. Scott in the present matter sufficiently detailed to establish the adequacy of Defendants' searches. *See, e.g., Physicians for Human Rights*, 675 F. Supp. at 162-

---

[6] By way of a footnote, PHR raises another argument that this Court rejected in its December 30, 2009 Memorandum Opinion. Specifically, PHR contends that "in order to conduct an adequate search under FOIA, Defendants were required to contact Lt. Col. Lapan, a DOD spokesperson who stated that CENTCOM had questioned U.S. troops in Afghanistan after the alleged massacre." PHR Cross-Mot. Summ. J. at 4, n.1. In their Reply, PHR further explained that "[t]o the extent [this] Court disagrees with this position, [PHR] expressly preserves this argument for purposes of appellate review." Because this Court already rejected this argument, it need not address it further.

64. Moreover, there is no requirement, and PHR points to no case law so indicating, that an agency is required to list the individual units of an agency that were *not* searched—indeed, such a requirement would impose a burden on Defendants that FOIA does not contemplate.

Additionally, PHR's arguments are unpersuasive with regard to the declaration's description of the key word searches conducted by Defendants.   The Defendants' declaration lists over thirty separate search words and combinations of words that were used. The declaration states that the CENTCOM units conducted "file name, content, properties, and full text searches" utilizing the search terms "independently, and then in combination designed to rule[ ] out false positives and identify all responsive records."  Third Scott Decl. ¶ 5.  This description is adequate, and Defendants' declaration sufficiently sets forth "the search terms and the type of search performed, and aver[s] that all files likely to contain responsive materials . . . were searched."  *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).  The declaration allows this Court to assess CENTCOM's search to the extent necessary to determine that it satisfied its burden in conducting a search "reasonably calculated to uncover all relevant documents."  *Weisberg v. DOJ*, 705 F.2d 1344, 1351, (D.C. Cir. 1983).  The fact that CENTCOM did not state the identity of the specific individuals who conducted the searches is of little moment—FOIA does not impose such a burden on the agency.  *See Maynard v. C.I.A.*, 986 F.2d 547, 563 (1st Cir. 1993) ("There is, however, no general requirement for an agency to disclose the identity and background of the actual persons who process FOIA requests.").

Finally, PHR's contention that Defendants' search was inadequate because the declaration does not establish that CENTCOM searched in Afghanistan, can be easily

disposed of. PHR made a similar argument in its first cross-motion for summary judgment, and this Court found that the declaration in question, also submitted by Ms. Scott, sufficiently established that the search conducted was of reasonable geographic scope and included Afghanistan. *See for Human Rights*, 675 F. Supp. at 162-63. Here, Ms. Scott's declaration explains that the supplemental search conducted by CENTCOM included "U.S. Forces, Afghanistan (USFOR-A) Combined Joint Task Force 82 and Combined Security Transition Commant." Third Scott Decl. ¶ 4. The declaration further states that those units are "responsible for conducting stability operations, establishing Afghanistan to deter the re-emergence of terrorism, facilitating reconstruction, partnering with the Government of the Islamic republic of Afghanistan and the international community to plan and implement management reforms of the Afghanistan National Security Forces." *Id.* These units were "the only offices of record within USCENTCOM (including Headquarters USCENTCOM and its area of operational responsibility, *i.e., Afghanistan*), that were reasonably likely to maintain documents responsive to the Physicians for Human Rights request." *Id.* (emphasis added). It is clear that the declaration sufficiently states the geographic scope of Defendants' search and this Court concludes that the search was adequate and included records located in Afghanistan.

## II. Propriety of Defendants' Withholdings under FOIA's Exemptions

As previously mentioned, after conducting the supplemental search ordered by this Court in its December 30, 2009 Memorandum Opinion, Defendants located three additional documents that were not previously discovered. *See* PHR Cross-Mot. Summ. J. Exs. 1-3. CENTCOM determined that certain portions of these documents contained information

9

subject to FOIA's statutory exemptions to disclosure, and redacted those portions of the documents. Defendants produced the redacted documents to PHR on April 15, 2010.

Defendants rely on FOIA exemptions 1, 2, 3, and 6 as bases for nondisclosure. The legal standard for reviewing withholdings under such exemptions was thoroughly described in this Court's previous Memorandum Opinion, and will not be reiterated here. Each claimed exemption will be addressed in turn.

**1. Withholdings Under Exemption 1**

Exemption 1 protects matters "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and . . . are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). In claiming protection under Exemption 1, Defendants rely on Executive Order 12,958 which allows for the classification of information that "could be expected to result in damage to the national security." Exec. Order No. 12,958 § 1.1(a)(4) (1995), *as amended*, 68 Fed. Reg. 15,315 (2003) (hereinafter "E.O. 12,958"). E.O. 12,958 sets forth seven categories of classification, of which only two are relevant and relied upon by Defendants: (1) information relating to intelligence activities, sources, or methods; and (2) foreign relations or foreign activities of the United States, including confidential sources. *See* Defs.' Mot. Summ. J. at 13 (citing E.O. 12,958 § 1.4). The declaration attached to Defendants' motion for summary judgment explains why two of the three documents, document 1 and document 3, were partially redacted under Exemption 1.

After reviewing the redacted documents, this Court concludes that Defendants have met their burden because Ms. Scott's declaration sets forth the "length, date, author and

brief description of each document," *Oglesby*, 79 F.3d at 1181, and a "relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document which they apply," *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977). PHR's central objection to Defendants' affidavit in support of their claimed exemption is that the declaration does not describe how Exemption 1 applies to each of the redacted sections individually. However, the very case relied upon by PHR does not impose such a requirement, and Ms. Scott's declaration provides this Court with a sufficient basis to evaluate the exemption claim. *See Judicial Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141, 146-47 (D.C. Cir. 2006). The declaration explains that documents 1 and 3 are intelligence highlight articles designed to provide intelligence information to people within the Department of Defense. Third Scott Decl. ¶¶ 8, 10. The declaration further states that the information withheld in those two documents "contains sensitive intelligence reporting material . . . [that] relates directly to intelligence activities, sources, or methods, and its disclosure would hinder and damage ongoing intelligence operations, collections, and activities within USCENTCOM's area of operation." *Id.* ¶ 15. As Defendants aptly note, the declaration submitted by Ms. Scott is similar to a declaration previously examined, and deemed sufficient by this Court. Specifically, with regard to Brigadier General Steven A. Hummer's declaration, this Court found that:

11

> The redactions in the USSOCOM documents appear to be targeted and precise, and the responsive portions provide the reviewer with some of the surrounding context. In addition, the redactions are specifically labeled in order to "correlate the claimed exemptions to particular passages." *Schiller*, 964 F.2d at 1209. By carefully delineating the exempt from the disclosed information, and by linking the withheld portions to the claimed exemptions, the affidavits afford a basis for finding that the agency has produced all "reasonably segregable" responsive portions of the documents at issue. *See Armstrong*, 97 F.3d at 578.

*Physicians for Human Rights*, 675 F. Supp. 2d at 170. The same can be said for Ms. Scott's declaration here. The redactions made by CENTCOM are limited in scope, and those that are made are clearly labeled so as to provide this Court with a basis for finding that the claimed exemptions are relevant and properly claimed.

Nevertheless, PHR claims that this Court should conduct an *in camera* review of the unredacted documents. While this Court has "broad discretion in determining whether *in camera* review is appropriate," *Armstrong v. Executive Office of the President*, 97 F.3d 575, 578 (D.C. Cir. 1996), the D.C. Circuit has cautioned that trial courts should not readily rely on the procedure without cause. *See, e.g., Ray v. Turner*, 587 F.2d 1187, 1195 (D.C. Cir. 1978). The D.C. Circuit has further cautioned that in the national security context "*in camera* review is a last resort to be used only when the affidavits are insufficient." *Hayden v. NSA*, 608 F.2d 1381, 1387 (D.C. Cir. 1979) (internal quotation marks and citation omitted); *see also Armstrong*, 97 F.3d at 580-81; *PHE, Inc. v. Dep't of Justice*, 983 F.2d 248, 252-53 (D.C. Cir. 1993). Because this Court has already concluded that the affidavit submitted by Defendants is sufficient, and because PHR has put forth no arguments or evidence tending to question the justifications provided in the affidavit, this Court concludes that *in camera* review of the documents is not warranted.

## 2. Withholdings Under Exemptions 2, 3, & 6

Defendants have also made certain withholdings under Exemptions 2, 3, and 6. Notably, PHR does not appear to challenge Defendants' withholdings under these exemptions. Rather, PHR's argument concerns only Exemption 1. Nevertheless, each exemption will be discussed briefly below.

Exemption 2 permits responding agencies to withhold information that is "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). This exemption has been construed to protect "predominately internal" documents in instances where (1) the documents relate to "trivial administrative matters of no genuine public interest" (known as the "low 2" exemption); or (2) the disclosure of the documents would "significantly risk[] circumvention of agency regulations or statutes" (known as the "high 2" exemption). *Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 670 F.2d 1051, 1069 (D.C. Cir. 1981) (en banc). Here, Defendants have withheld internal telephone numbers in documents 1 and 3 under Exemption 2. Ms. Scott's declaration states that the organization's telephone numbers are "of purely internal interest to the agency . . . and would serve no public interest." Third Scott Decl. ¶ 16. In addition, the declaration states that "the public release of those phone numbers could unnecessarily hinder the organization's daily performance effectiveness to accomplish its assigned operational mission." *Id.* The withholding of internal telephone numbers is generally appropriate, and is appropriate in this particular case as well. *See, e.g., Concepcion v. F.B.I.*, 606 F. Supp. 2d 14, 31 (D.D.C. 2009); *Fischer v. U.S. Dep't of Justice*, 596 F. Supp. 2d 34, 45-46 (D.D.C. 2009).

Under Exemption 3, FOIA allows the withholding of material that is "specifically exempted from disclosure by statute provided that such statute . . . requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue . . . ." 5 U.S.C. § 552(b)(3). Ms. Scott's declaration cites 10 U.S.C. § 424 as a statute that falls within the scope of Exemption 3. This Court has previously recognized that § 424 protects "sensitive identifying information at issue, including the name, geographic location, and subject matter responsibilities of some of its offices," and is indeed a statute that falls within the scope of Exemption 3. *Physicians for Human Rights*, 675 F. Supp. 2d at 160. Ms. Scott's declaration states that "[p]ortions of document 3 have been withheld under [Exemption 3] because they name a DIA unit and its location, which if released, would reveal DIA's organizational structure and affect the agency's mission." Third Scott Decl. ¶ 17. This Court finds that Defendants properly invoked Exception 3 to withhold limited amounts of information in document 3.

Finally, Defendants have withheld certain information under Exemption 6. Exemption 6 permits agencies to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The term "similar files" has been broadly interpreted by the Supreme Court of the United States to include information that "applies to a particular individual." *U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 602 (1982). Once this minimal threshold is satisfied, courts balance the privacy interests cited by the government against the public's interest in the release of the requested information. *Lepelletier v. FDIC*, 164 F.3d 37, 46, 334 U.S. App. D.C. 37 (D.C. Cir. 1999). However, the "only relevant public interest in

disclosure to be weighed in this balance is the extent to which disclosure would serve the core purpose of the FOIA, which is contributing significantly to public understanding of the operations or activities of the government." *Dep't of Defense v. Fed. Labor Relations Auth.*, 510 U.S. 487, 495-96, 114 S. Ct. 1006, 127 L. Ed. 2d 325 (1994) (internal citation and quotation marks omitted).

Here, Ms. Scott's declaration states that "USCENTCOM has withheld individual's names from document 1 . . . and document 3 . . . . USCENTCOM has balanced the individuals' interests in privacy against the public interest in disclosure of their names, and determined that disclosure of the names could put our service member, contractor, and civilian employees at risk." Third Scott Decl. ¶ 18. Considering the fact that PHR does not challenge Defendants' invocation of Exemption 6 with regard to the withholding of certain individuals' names, and that this Court has previously found that Defendants properly withheld individuals' names in similar circumstances, *see Physicians for Human Rights*, 675 F. Supp. 2d at 169, this Court concludes that the names at issue were properly withheld.

In sum, Defendants have produced a "reasonably detailed affidavit, setting forth the search terms and the type of search performed, and [have] aver[ed] that all files likely to contain responsive materials . . . were searched." *Oglesby*, 920 F.2d at 68. As a result, Defendants are entitled to summary judgment because they have "conducted a search reasonably calculated to uncover all relevant information, which either has been released to the requester or is exempt from disclosure." *Thomas v. HHS, Food & Drug Admin.*, 642 F. Supp. 2d 5, 8 (D.D.C. 2009).

15

## CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment (ECF No. 35) is GRANTED and Plaintiff PHR's Cross-Motion for Summary Judgment (ECF No. 39) is DENIED.

A separate Order follows.

Dated:  April 19, 2011                                    /s/ _Rll D. Bentt_

                                                         Richard D. Bennett
                                                         United States District Judge